IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | ) | |
|---|---|---|
| GENWORTH LIFE AND ANNUITY INSURANCE COMPANY, | ) ) ) | |
| | ) | Case No. 4:10CV00018 |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION** |
| STEPHEN BRETT HUFF, ADAM ROSS HUFF, and BRANDON C. BURKE, a minor, by and through his Mother and Next Friend, SANDRA BURKE, | ) ) ) ) ) ) | By: Jackson L. Kiser Senior United States District Judge |
| Defendants. | ) | |

This matter is before the court on Plaintiff Genworth Life and Annuity Insurance Company's ("Genworth") Motion for Entry of Procedural Interpleader Order [Docket No. 4], filed pursuant to 28 U.S.C. §§ 1335 and 2361. Defendants Stephen Brett Huff ("Stephen"), Adam Ross Huff ("Adam"), and Brandon C. Burke ("Brandon") (by and through his mother, Sandra Burke), either have been served or have waived service [Docket Nos. 7 and 10]. Brandon Burke's Answer was due on June 7, 2010; no answer was filed. Stephen Huff's Answer was due on July 12, 2010; no such answer was filed. Finally, Adam Huff's Answer was due on July 19, 2010, yet no answer was filed. Therefore, all facts alleged in the Complaint are deemed as admitted by all parties. Upon thorough review of the file, I find that the Motion for Entry of Procedural Interpleader shall be **GRANTED**.

# I.

On or about November 6, 1983, Charles Alan Huff ("Charles") applied for a life insurance policy worth $50,000.00 with Genworth ("the policy"). Genworth granted Charles the policy. Initially Charles named his mother, Thelma Huff, the primary beneficiary under the policy, and he named his nephews, Adam Ross and Stephen, as contingent beneficiaries.

During his lifetime, Charles applied for and received many loans against the policy. In January 1991, Charles requested and received $1,707.17 from Genworth. In March 1995, he received an additional $1,250.00, which represented his loan request amount minus the previous outstanding loan amount and interest. In October 2003, Charles applied for a partial withdrawal of the principle to pay off his loan balance against the policy. His withdrawal totaled $3,016.89. In November of the same year, Charles was notified that, as a result of his withdrawal, the benefit on the policy payable upon his death was reduced to $46,958.11.

In July 2004, Charles applied for another loan against the policy in the amount of $2,000.00. Genworth granted his request and sent him a check for the amount of the loan. In July 2008, Charles again requested $2,000.00 and Genworth complied.

On or about May 22, 2009, Genworth received a Request for Beneficiary Change Form, signed by Charles the day before, naming Brandon C. Burke ("Brandon") and Earlie Boles, Jr., as the primary beneficiaries under the policy. Charles described Brandon as his godson and Earlie Boles, Jr., as his friend.

In June 2009, Charles requested a policy loan for the maximum amount available. Genworth processed his request and sent him a check for $370.60, which represented the

maximum amount available ($4,714.14) less the previous, outstanding loans (totaling $4,332.75) and interest ($11.06).

On or about June 23, 2009, Genworth received another Request for Beneficiary Change form from Charles naming Brandon as the primary beneficiary. Charles did not name any contingent beneficiaries. Three days later, Genworth sent Charles a letter confirming the change of the primary beneficiary and requesting Brandon's date of birth for administrative purposes.

On or about July 6, 2009, Genworth received a hand-written letter from Charles requesting that Genworth send him a "Trustee application form" for Brandon in order to record the form with his attorney. On July 23, 2009, Genworth sent Charles a Certification of Trustee Powers form.

On August 21, 2009, Genworth sent Charles a letter (as requested) stating that the current beneficiary under the policy was Brandon. On September 11, 2009, Genworth received a letter from Charles, dated September 9, 2008,[1] which stated: "I give Steven Ray Burke of 148 Talbott Drive Danville Va 24540 Brandon C. Burke . . . his uncle to be in charge of his money upon my death. His phone number is . . . . Please send me a copy of this when it is recorded on the policy." Genworth was unable to complete Charles's request as written, so they followed up on September 29, 2009, with a letter requesting a clarification about whether "Brandon C. Borbe" and "Steven R. Burbe" were to be the designated primary beneficiaries of the policy. Unfortunately, Charles died on December 13, 2009, without ever responding to Genworth's request for clarification.

On or about December 28, 2009, Stephen, Adam, and Nikolas Brett Huff filed a claim in Danville Circuit Court against Brandon and others regarding Charles's estate.

---

[1] This discrepancy in the year is in the original letter.

Michael A. Cole, an attorney representing the estate, notified Genworth that litigation had commenced and that a hearing was scheduled for January 19, 2010, on a restraining order "precluding payment of any benefits under [the] policy pending a final determination of the Court as to the proper beneficiary." Mr. Cole also warned Genworth that any payment made under the policy "will be made at [Genworth's] peril."

Genworth represents to this Court that they have considered the competing claims of Brandon, Stephen, and Adam and are unable to determine which party is the rightful beneficiary under the policy. Although Adam appears to have disclaimed any interest in the benefits from the policy (*see* Compl. Ex. X), Genworth still lists him as a possible beneficiary under the policy. Payout of the life insurance policy to the appropriate beneficiary would total $46,958.11.

## II.

Pursuant to 28 U.S.C. § 1335(a), a federal district court has original jurisdiction over an interpleader action if certain prerequisites are properly established. Section 1335(a) states as follows:

> (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 of more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by

> > virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if
> > (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

28 U.S.C. § 1335(a).

I find that the terms of § 1335(a) have been satisfied in the instant case. Two of the adverse claimants are diverse within the meaning of 28 U.S.C. § 1332(a)(1),[2] and the policy in question exceeds the $500 minimum amount-in-controversy requirement. It appears that both Stephen and Brandon claim an interest in the proceeds of the policy in question,[3] and it is apparent that Genworth will be, if it has not already been, exposed to multiple claims regarding the distribution of the settlement option disbursements. Genworth has represented to the Court that it is prepared to pay the proceeds currently due and owing under the policy, along with any applicable and accrued interest, into the registry of the court, and by way of this Memorandum Opinion and accompanying Order, I hereby instruct Genworth to take such action.

Upon completion of this deposit, Genworth will be discharged from any and all liability to Stephen, Brandon, or Adam in relation to Genworth's payment of the benefits under the policy. Additionally, Genworth will be dismissed from this action and,

---

[2] Stephen and Adam are residents of the state of Florida; Brandon resides with his mother in Dry Fork, Virginia. (Compl. ¶¶ 3–5.)

[3] Whether Adam will claim an interest in the benefits of the policy remains to be seen. Genworth submitted Adam's purported disclaimer of interest in the proceeds, but that may be subject to challenge.

pursuant to 28 U.S.C. § 2361,[4] Stephen, Brandon, and Adam are restrained and enjoined from instituting, prosecuting, or continuing any action or proceeding against Genworth arising out of, or related to, the policy in any federal or state court. This Court will retain jurisdiction of this action for the adjudication of such further matters as properly come before it, such as determining the respective rights of the claimants to the benefits of the policy as well as plaintiff's right to costs and attorney's fees.

## III.

For the reasons stated above, I will **GRANT** Genworth's Motion for Entry of Procedural Interpleader Order. The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to Defendants and counsel of record for the Plaintiff.

Entered this 20th day of July, 2010.

s/Jackson L. Kiser<br>
Senior United States District Judge

---

[4] The statute provides as follows:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.
>
> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361.